# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ERIN THOMAS, | ) |
|       Plaintiff, | ) |
| v. | ) |
| EQUIFAX INFORMATION SERVICES, LLC., | ) |
| And | ) |
| TRANS UNION, LLC, | ) |
| And | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) |
|       Defendants | ) |

## COMPLAINT

COMES NOW Plaintiff, ERIN THOMAS, by and through undersigned counsel, and for her Complaint against the Defendants, Equifax Information Services, LLC, Trans Union, Inc., and Experian Information Solutions, Inc she states and avers as follows:

## INTRODUCTION

1. This is an action for actual, statutory and punitive damages brought by Plaintiff against Defendants for the willful, knowing, and/or negligent violation of, inter alia, Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 et seq., known as the Fair Credit Reporting Act ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## PARTIES

2. Erin Thomas ("Plaintiff") is a natural person that resides in Kansas City, Missouri.

3. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. § 1681a(c).

4. Equifax Information Services, LLC ("Equifax") is foreign limited liability company that regularly transacts business in Missouri through its registered agent, CSC- Lawyers Incorporating Service Company, 221 Bolivar St, Jefferson City, Missouri 65101.

5. Equifax is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

6. Trans Union, LLC ("Trans Union") is foreign limited liability company that regularly transacts business in Missouri through its registered agent, The Prentice-Hall Corporation, 221 Bolivar Street, Jefferson City, Missouri 65101.

7. Trans Union is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

8. Experian Information Solutions, Inc. "(Experian)" is a foreign corporation that regularly transacts business in the state of Missouri, by and through its registered agent, The Corporation Company, 120 South Central Ave, Suite 400, St. Louis, MO, 63105.

9. Experian is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

11. Venue in this District is proper because Plaintiff resides in this District, Defendants transact business in this District, and the conduct complained of occurred in this District.

## BACKGROUND AND FACTUAL ALLEGATIONS

12. In May 2022, Plaintiff decided she was ready to purchase a new home. She consulted with a mortgage lender and obtained a copy of her credit report.

13. Unfortunately, she was unable to qualify for mortgage financing because her credit score was too low.

14. Upon reviewing her credit report, she noticed several listed accounts that she did not recognize.

15. On or about May 9, 2022, Plaintiff sent correspondence to the major consumer reporting agencies, Equifax, Trans Union and Experian ("the CRAs") requesting the accounts be investigated for accuracy. She received notification from the United States Postal Service that each correspondence had been delivered; most on May 16/17, 2022. She has confirmed proof of delivery from the United States Postal Service for the three communications.

16. Upon information and belief, and pursuant to 15 U.S.C. § 1681i(a)(2) of the FCRA, each consumer reporting agency forwarded a copy of Plaintiff's dispute letters to the furnishers.

17. Pursuant to 15 U.S.C. § 1681s-2(b) of the FCRA, the furnishers were then obligated to investigate the disputed information for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

18. However, the CRAs failed to acknowledge or respond to Plaintiff's letters and allowed the questionable collection accounts to remain on Plaintiff's credit reports. Further, none of the questionable collection accounts disputed by Plaintiff were ever notated as "in dispute" on the credit report.

19. This left Plaintiff confused. Were the debts valid? Did the CRAs properly process her request? Had the bureaus done any investigation into her disputes?

20. On or about June 14, 2022, Plaintiff again sent correspondence to the major consumer

reporting agencies, Equifax, Trans Union and Experian ("the CRAs") requesting the accounts be investigated for accuracy. She received notification from the United States Postal Service that each correspondence had been delivered; on June 16 and June 24, 2022. She has confirmed proof of delivery from the United States Postal Service for the communications.

21. Eventually, Plaintiff retained counsel to inquire into the legitimacy of the collection accounts.

22. On or about June 16, 2022, Plaintiff's counsel sent correspondence to the listed creditors requesting they validate the debt at issue with supporting documentation.

23. Believing the matter behind her, on or about July 20, 2022, Plaintiff obtained a copy of her credit report to confirm that she was now ready to move forward with her home loan.

24. However, Plaintiff was shocked to discover that very few of the disputed items had been removed and in fact, her report reflected even more inaccurate information. Several unknown items remained and her "address" listed on the report had been inaccurately changed.

25. In an effort to minimize any further delay, Plaintiff sent another letter on July 20 and August 24, 2022, to the CRAs again disputing the accuracy of her credit report.

26. Surprisingly, the CRAs failed to respond to Plaintiff's dispute and the accounts continued to appear on her credit reports.

27. This response left Plaintiff angry. Did the CRAs forward her dispute letters as required? Why were these collection accounts still on her report?

28. Again, the CRAs failed to respond or investigate the collection accounts reporting inaccurately to plaintiff's credit file.

29. Plaintiff fears, justifiably, that the CRAs will continue to report inaccurate collection accounts on her credit report, harming her credit scores, absent litigation.

4

Case 4:23-cv-00327-RK     Document 1     Filed 05/11/23     Page 4 of 16

## FIRST CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Experian

29. A "consumer reporting agency" is defined by the FCRA as follows:

30. [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

31. Experian is a "consumer reporting agency" as defined by the FCRA.

32. Section 1681n of the FCRA imposes civil liability on any entity "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a).

33. Section 1681o of the FCRA provides for civil liability against any entity that is negligent in failing to comply with any requirement imposed under the Act.

34. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

35. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

### Experian's Reasonable Reinvestigation Violations

36. By letters dated, May 9, 2022, June 14, 2022, July 20 and August 24, 2022, Plaintiff disputed the false information listed on an account appearing on her Experian credit report.

37. Plaintiff specifically advised Experian that a mistake had been made, provided all necessary information to Experian to support same, and requested the trade line be deleted or updated accordingly.

38. Either Experian conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

39. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Experian willfully and/or negligently violated 15 U.S.C. § 1681$i$(a)(1).

40. As a direct and proximate result of Experian's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

41. As a direct and proximate result of Experian's willful and/or negligent refusal to delete false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

42. Upon information and belief, Experian has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

43. Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

### Experian's Failure To Follow Reasonable Procedures To Assure Maximum Possible Accuracy

44. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

45. On numerous occasions, Experian has prepared a patently false consumer report concerning Plaintiff.

46. Despite actual and implied knowledge that the Jefferson Capital, Ability Recovery and Sun Loan accounts were reporting inaccurate information, Experian readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Experian reported.

47. On each such instance, Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

48. Through Plaintiff's communications with Experian, Experian knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff. Nevertheless, Experian took no measure to stop painting a false and damaging picture about Plaintiff.

49. Experian failed to notate the disputed accounts as "in dispute" and further failed to notify Plaintiff that they were investigating her claims.

50. Plaintiff has suffered out-of-pocket loss as a result of Experian's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Experian's pockets.

51. As a direct and proximate result of Experian's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

52. Upon information and belief, Experian has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, specifically including improperly processing and investigating incoming consumer disputes ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

53. Experian's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in his favor and against Experian, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## SECOND CLAIM FOR RELIEF

**Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by TransUnion**

54. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

### TransUnion's Reasonable Reinvestigation Violations

55. By letters dated May 9, 2022, June 14, 2022, July 20 and August 24, 2022, Plaintiff disputed information listed on an account appearing on her TransUnion credit report.

56. Plaintiff specifically advised TransUnion that a mistake had been made, provided all necessary information to Trans Union to support same, and requested the trade line be deleted or updated accordingly.

57. Either Trans Union conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

58. Either Trans Union conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

59. As a direct and proximate result of TransUnion's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

60. As a direct and proximate result of TransUnion's willful and/or negligent refusal to remove false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

61. Upon information and belief, TransUnion has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

62. TransUnion's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

### TransUnion's Failure To Follow Reasonable Procedures To Assure Maximum Possible Accuracy

63. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

64. On numerous occasions, TransUnion has prepared a patently false consumer report concerning Plaintiff.

65. Despite actual and implied knowledge that the accounts contained inaccurate information, Experian readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what TransUnion reported.

66. On each such instance, TransUnion willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

67. Through Plaintiff's communications with TransUnion, TransUnion knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff. Nevertheless, TransUnion took no measure to stop painting a false and damaging picture about Plaintiff.

68. Plaintiff has suffered out-of-pocket loss as a result of TransUnion's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined TransUnion's pockets.

69. As a direct and proximate result of TransUnion's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

70. Upon information and belief, TransUnion has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, specifically including improperly mixing and/or

merging information of more than one person into a consumer's credit file, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

71. TransUnion's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against TransUnion, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## THIRD CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Equifax

72. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

### Equifax's Reasonable Reinvestigation Violations

73. By letters dated May 9, 2022, June 14, 2022, July 20 and August 24, 2022, Plaintiff disputed information listed on an account appearing on her Equifax credit report.

74. Plaintiff specifically advised Equifax that a mistake had been made, provided all necessary information to Equifax to support same, and requested the trade line be deleted or updated accordingly.

75. Either Equifax conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

76. Equifax failed to notate the disputed accounts as "in dispute" and further failed to notify Plaintiff that they were investigating her claims.

77. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681$i$(a)(1).

78. As a direct and proximate result of Equifax's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

79. As a direct and proximate result of Equifax's willful and/or negligent refusal to remove false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

80. Upon information and belief, Equifax has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

81. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

## Equifax's Failure To Follow Reasonable Procedures
## To Assure Maximum Possible Accuracy

82. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

83. On numerous occasions, Equifax has prepared a patently false consumer report concerning Plaintiff.

84. Despite actual and implied knowledge that the accounts contained inaccurate information, Experian readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Equifax reported.

85. On each such instance, Equifax willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

86. Through Plaintiff's communications with Equifax, Equifax knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff. Nevertheless, Equifax took no measure to stop painting a false and damaging picture about Plaintiff.

87. Plaintiff has suffered out-of-pocket loss as a result of Equifax's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Equifax's pockets.

88. As a direct and proximate result of Equifax's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

89. Upon information and belief, Equifax has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, specifically including improperly mixing and/or merging information of more than one person into a consumer's credit file, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

90. Equifax's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against Equifax, and for the following relief:

(f)  Actual damages sustained;

(g)  Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(h) Punitive damages in an amount to be determined by the jury;

(i) Reasonable attorneys' fees and costs; and

(j) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

**JURY DEMAND AND PLACE OF TRIAL**

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully submitted,

**By: s/Tom Addleman**
Tom Addleman #51864
Credit Law Center, LLC
4041 NE Lakewood Way, Suite 140
Lee's Summit, MO 64064
T: (816) 246-7800
F: (855) 523-6884
toma@creditlawcenter.com
**Attorney for Plaintiff**